[L. A. No. 6420. Department One.—June 7, 1921.]

GUARANTY TRUST AND SAVINGS BANK (a Corporation), et al., Respondents, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[1] APPEAL—SEVERAL DECREES—REVIEW.—Where a notice of appeal recites the taking of appeals from several decrees and the appeal is taken on the judgment-roll alone, from which it appears that only one decree was entered within sixty days before the filing of the notice of appeal, the only effectual appeal is from such decree, and unless the other decrees are merely interlocutory orders or judgments of a character that makes them reviewable on appeal from the appealable decree, they cannot be considered; and if either of the other decrees was the final judgment and the appealable decree was one merely for the purpose of its enforcement, the other decrees may be examined only for the purpose of ascertaining which one is the final judgment.

[2] ACTION TO ESTABLISH TRUST—VOID TUNNEL ASSESSMENT—FINAL JUDGMENT.—In an action by the holder of void tunnel assessment bonds to establish a trust in the tunnel against the city, a decree declaring the establishment of the trust in favor of the plaintiff and other bondholders, and directing that the latter be brought in as parties, and ordering that when the amounts due them were ascertained, that in case the city failed to pay, the property be sold as upon a foreclosure, was interlocutory in its nature, and the judgment entered after the bringing in of such parties, and the determination of the amounts due them, was the final judgment in the action.

[3] JUDGMENT—ORDER—DISTINCTION.—A decree which finally disposes of all the issues raised between all the parties to an action and finally settles and adjudicates all rights in controversy is final,

while an order is a decision made during the progress of a cause settling some point of practice or some question collateral to the main issue presented by the pleadings if made before judgment, or settling some question necessary to be determined in carrying into execution the final judgment, if made after judgment.

[4] Id.—Effectiveness of Judgment—Necessity for Future Orders —Validity Unaffected.—A decree is none the less final because some future orders of the court may become necessary to carry it into effect, and if the judgment disposes of the merits of the action and terminates the controverted issues, the fact that further proceedings remain to be taken in court to make it effective does not affect its finality.

[5] Action to Establish Trust—Nature of Supplemental Decree. Where in an action by the holder of void tunnel assessment bonds to establish a trust in the tunnel against the city a final judgment was entered determining the amounts due all the bondholders and ordering the tunnel to be sold if the city did not pay, a supplemental decree stating that the city had elected to pay and retain the property and fixing the terms of payment was merely an order of court after final judgment made for the purpose of more effectually carrying out the provisions of the final judgment.

[6] Id.—Void Tunnel Assessment Bonds—Payment by City—Constitutional Law.—In an action by the holder of void tunnel assessment bonds to establish a trust in the tunnel against the city, a decree requiring the defendant to restore to the plaintiff and other intervening bondholders the money furnished by them to the contractors on the faith of the validity of the assessment and bonds, as a condition to the city retaining the property, was not to compel the city to make a gift to the plaintiff and other bondholders of money in violation of section 31 of article IV of the constitution.

[7] Id.—Property Held for Public Use—Judgment—Private Property—Effect of.—A judgment declaring that property held by a city for public use is the property of a private individual is, after it has become final, conclusive upon the city and the public, where the court has jurisdiction of the subject matter and of the parties.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles S. Burnell, City Attorney, Jess E. Stephens, City Attorney, and J. H. O'Connor, Deputy City Attorney, for Appellant.

Delphin M. Delmas, Herbert Cutler Brown, Harry W. McNutt, Swanwick & Donnelly, W. W. Hindman, Byron D. Seaver, W. C. Petchner, John B. Yakey, John J. Craig, Thomas C. Ridgway and Milton K. Young for Respondents.

SHAW, J.—[1]  The appellant, city of Los Angeles, filed its notice of appeal on December 9, 1919, stating therein that it appeals from the modified supplemental decree entered on October 14, 1919, and from the judgments or decrees entered respectively on January 12, 1918, March 29, 1918, July 3, 1918, August 15, 1918, and January 17, 1919, and from each of them.  Inasmuch as the only decree mentioned which was entered within sixty days after the filing of the notice of appeal is that of October 14, 1919, it follows that the only effectual appeal is from the decree of October 14, 1919. The appeal is on the judgment-roll alone, and we cannot on this appeal consider the validity or merits of any other decree than that of October 14, 1919, unless the preceding decrees are merely interlocutory orders or judgments of a character that makes them reviewable on appeal from the last decree.  If either of the preceding decrees was the final judgment on the merits, and the decree appealed from was an order or decree made after final judgment for the purpose of carrying out or enforcing such final judgment, then the preceding decrees may be examined only for the purpose of ascertaining which one is the final judgment and whether the decree of October 14, 1919, is supported as a supplemental decree by the record on which it is founded.

The appellant contends that the decree of October, 1919, is the final decree in the case, that the previous ones are merely interlocutory decrees, and consequently that the entire judgment-roll may be reviewed on this appeal.  The respondents, on the other hand, contend that the decree of October, 1919, is nothing more than a supplemental decree or order to carry out and enforce the final judgment in the action, which they say was the decree entered August 15, 1918.  In order to determine this question it is necessary to consider the nature of the action and the subsequent proceedings leading up to the judgment of August, 1918.

The city of Los Angeles in 1912 began a proceeding under the street improvement law for the construction of a tunnel

in Hill Street in that city, the expenses of which were to be paid, under the proceeding, by an assessment against the property within a district established by the city for that purpose. The contract was let for the construction of the tunnel in pursuance of this proceeding; it was completed and accepted by the city in 1913, and thereupon the usual assessment for the contract price and expenses was levied upon the property within the district. A large number of owners of property within the district paid the assessment. Others allowed bonds to issue on their property for the assessment against the same as provided by the statute under which the proceeding was conducted, and many of these bonds afterward passed from the contractors into the hands of other persons, among them the plaintiff and several of the interveners. Thereafter, in an action which finally came to this court on appeal, it was determined that the whole proceeding for the construction of the tunnel, including the assessment and issuance of the bonds, was absolutely void. (*Thompson* v. *Hance*, 174 Cal. 572, [163 Pac. 1021].) The complaint herein alleges that the plaintiff had purchased from the contractors some of the bonds so issued, amounting to $9,095.15. It also sets forth the proceedings for the assessment, the fact that it was declared void as aforesaid, and alleges that the entire proceeding was inaugurated and carried on by the persons concerned, other than the property owners, in good faith and in the belief that it was authorized by law, and that a large number of the property owners, acting in the same belief, paid the assessment or suffered bonds to issue on their property; that all were acting under a misapprehension and mistake of law, all supposing that they knew and understood it, and making substantially the same mistake, but that others of the property owners, who did not so believe, brought the action which resulted in the decision aforesaid that the proceeding was utterly void. Plaintiff alleged that it brought the action in behalf of itself and all others who were united in interest with it and who should elect to come into the action. The prayer was that it be ascertained what amount was due to the plaintiff and other parties who might come in as interveners on account of the payments made or bonds held by them; that after such adjudication the city of Los Angeles be given twenty days in which to elect whether it would pay the amounts so found to be due, and

if it announced its intention to pay, that it be given time
and afforded facilities and accommodations such as its finan-
cial condition and means should render reasonable in which
to pay, but that if it failed to pay or to announce its elec-
tion to do so, then, either, first, that the tunnel be sold to
satisfy the amount of money due, in the same manner as
property is sold under a .foreclosure of a mortgage, or,
second, that the tunnel be decreed to be the property of the
parties in whose favor the adjudication was made, and for
such other and further relief as to equity may seem meet.
The theory of the complaint was that the tunnel had been
built with the money which the plaintiff and the several in-
terveners had furnished to the contractors on the faith of
the validity of the assessment and bonds aforesaid; that it
had become the property of the city of Los Angeles without
any consideration, and that in consequence thereof the city
held the tunnel as property belonging to the plaintiff and
the interveners and in trust for them. The object of the
action obviously was to enforce this trust either by selling
the property and distributing the proceeds to the benefici-
aries of the trust, or by declaring the property to be the
property of the plaintiff and interveners, and providing that
if it desired to hold it, the city could do so by paying the
plaintiff and the interveners the amounts they had paid for
its construction.

The city filed a demurrer to this complaint, which was
overruled by the court and the city failed to answer. There-
upon the court entered the default of the city for failure to
answer and rendered a decree declaring that the tunnel was
held by the city in trust for the plaintiff and the interveners
and for other persons who should be held entitled to come in,
and, further, that a large number of persons were entitled
to come in as interveners who had not as yet come in and
whose presence as parties was necessary to a complete deter-
mination of the action, and directing that they be brought
in as parties, and that for that purpose a supplemental com-
plaint be filed and served upon them, and further ordering
that when the amount to be paid to the several parties inter-
ested in the fund was ascertained the city be allowed twenty
days in which to elect to retain the tunnel and pay the
amount, in which case it should be given reasonable
time and facilities to make such payment; that when

payment should be made the several parties should receive their due proportion thereof as should be determined by the decree of the court, but that if the city failed to pay, that it should forthwith deliver to the parties adjudged to be equitably entitled thereto the tunnel aforesaid; and, further, that the city's right, title, and interest in and to said tunnel had by force and virtue of the decree passed to and vested in said parties, and that since partition thereof could not be made without prejudice to said owners, that the same be sold as upon foreclosure sale of a mortgage and the amount realized be distributed to the parties respectively in proportion to his right as the same should be determined by the court.

[2] This so-called judgment was interlocutory in its nature. Although it declared the rights which the court concluded the plaintiff and the parties then before the court had with respect to the tunnel, it is evident from the fact that other parties having similar rights were necessary to a complete determination of the case, and direction was given for bringing them in, that it was not intended to be final. In accordance with this direction, a supplemental complaint was filed and served upon a large number of persons who had either paid assessments or held bonds issued thereon. Such persons filed complaints in intervention, demurrers were filed thereto by the city and were overruled, and decrees or orders similar to that just mentioned were entered on March 29 and July 3, 1918. Finally, however, on August 15, 1918, the parties ordered to be brought in having all appeared or having declined to appear, the court entered a judgment, reciting that the cause came on regularly for final hearing, all the parties being represented by their respective counsel. This judgment recites the beginning of the action, the filing of the several complaints in intervention and of the demurrers thereto, the orders overruling the demurrers, the refusal of the city to answer the several complaints; that thereupon the court determined the amounts due to the respective parties interested on account of said assessment and bonds. Then follows the judgment of the court that the city held the tunnel in trust for the plaintiff and interveners; that if it chose to do so it would be allowed to retain the tunnel by paying into court for the persons entitled thereto the sums of money so ascertained as due

them, which are set out in detail, amounting to $144,526.81; that the city be granted twenty days from the entry of the judgment in which to elect whether it would pay said amount; that if within that period it announced its intention to pay, it should be given such time and afforded such facilities to make such payment as the court should deem reasonable, and that if it did pay the same, the amount should be distributed to each party according to the apportionment made in the decree; that if within the twenty days it should fail to so elect to retain the tunnel, it should then deliver the said tunnel to the parties entitled thereto, that is, the plaintiff and the interveners, and that "all its right, title, interest and claim in and to the said tunnel do by force and virtue of this decree, *ipso facto*, pass to and vest in said parties"; also that thereupon the tunnel be sold as upon the foreclosure of a mortgage and the amount realized be distributed among the parties according to their interest.

We think there can be no doubt that this judgment constitutes the final judgment in the action. It was not made until all the parties whom the court deemed necessary were brought in and made parties to the suit so that the entire controversy could be determined. It purports to and does determine all the issues presented by the pleadings of all the parties and it ascertains and states the rights of the parties arising thereon, and the relief to be given for the enforcement of those rights. This constitutes a final judgment. [3] "A decree which finally disposes of all the issues raised between all the parties to an action and finally settles and adjudicates all the rights in controversy is final." (2 Ency. Pl. & Pr. 65.) An order "is a decision made during the progress of a cause . . . settling some point of practice or some question collateral to the main issue presented by the pleadings," if made before judgment, or settling some question "necessary to be determined in carrying into execution the final judgment," if made after judgment. The final judgment "is the determination of the court upon the issues presented by the pleadings, which ascertains and fixes absolutely and finally the rights of the parties in the particular suit in relation to the subject matter in litigation and puts an end to the suit." (*Loring* v. *Illsley*, 1 Cal. 27, 28.) [4] "A decree is none the less final because some future orders of the court may become necessary to carry it into

effect; . . . nor because, when the merits of the controversy are adjudicated upon, and the equities of the parties definitely settled, an account is directed to be taken to ascertain what sum is due from one to the other, as the result of the decision made by the court'' (Freeman on Judgments, sec. 24) ; or where, as the result of the judgment, the defendant or plaintiff is required to pay money in order to have it carried out and a subsequent order is necessary for the purpose of determining that the money had been paid and the conditions complied with. (Freeman on Judgments, sec. 28.) ''If the judgment stand the test of the inquiry as to whether it disposes of the merits of the action, and terminates the controverted issues, the fact that further proceedings remain to be taken in court to make it effective does not affect its finality.'' (2 Spelling on New Trial, sec. 483.) See, also, *Zappettini* v. *Buckles,* 167 Cal. 32, [138 Pac. 696], where the subject is elaborately treated.

[5] The so-called judgment of January 17, 1919, recites that the city had elected to avail itself of the privilege of retaining the property and paying the amount therefor fixed by the aforesaid decree, as therein provided. Thereupon the court entered a supplemental order or decree to the effect that the proposition of the city to retain the tunnel and pay the money was accepted; that the city thereby became indebted to the respective parties plaintiff and interveners in certain specified amounts to each, and that payment thereof be made by the city in five installments as therein set forth. Thereafter, in October, 1919, the plaintiff moved the court to modify the said last-mentioned supplemental decree in certain particulars. The motion was granted and thereupon the court, on October 14th, entered the modified supplemental decree from which the present appeal is taken. In this decree the court ordered that the plaintiff and interveners recover a certain sum which the parties had agreed to accept on account as the consideration for extending the privilege given to the city to retain the tunnel; and providing that the remainder of the sum due the parties be paid in five installments annually, and declaring that when all the payments should be made, as therein provided, the title and interest of the plaintiff and interveners in the tunnel should be extinguished and the same should become and be the property of the city of Los Angeles, free and clear of any

claim of the said parties thereto, but that if the city should fail to pay, as thus provided, its privilege should expire, and the tunnel should remain the property of said parties, free of all claim by the city.

The last-mentioned supplemental decree was nothing more than an order of the court after judgment, made for the purpose of more effectually carrying out the provisions of the final judgment entered in August, 1918. The appellant concedes that if this be the correct view of the case, it has no objection to urge against this supplemental order.

[6] The main point urged in support of the appeal is that the city was never under any obligation to restore to the plaintiff and interveners, or to the contractors, the money so furnished to such contractors for the construction of the tunnel; that the effect of a judgment requiring such restoration was to compel the city to make a gift of such money to the parties claiming it; that this is forbidden by the provisions of section 31 of article IV of the constitution, and consequently that the entire proceeding, including the final judgment of August, 1918, is absolutely void and constitutes no foundation for the supplemental decree attempting to enforce it. It is clear that there is no foundation for this claim. The entering of the judgment of August, 1918, was not a gift by the city to any person. The plaintiff and the interveners asserted their claims in a court of general jurisdiction in good faith and for the purpose of obtaining relief in that court. The court had jurisdiction of the action and of the parties thereto. It gave its judgment accordingly, declaring that the city held possession of the tunnel, but that it held the same in trust for the use and benefit of the plaintiff and the interveners and that it was the property of the plaintiff and interveners, at the same time giving the city the privilege of retaining the same on payment of the money which had been furnished by the other parties and with which the tunnel had been constructed. The judgment, being given by a court having jurisdiction of the subject matter and of the parties and having become final, is binding and conclusive. [7] Such a judgment declaring that property held by a city for public use is the property of a private individual is, after it has become final, conclusive upon the city and the public. (*San Francisco* v. *Holladay*, 76 Cal. 18, [17 Pac. 942]; *People* v. *Holladay*, 93 Cal. 247, [27

Am. St. Rep. 186, 29 Pac. 54]; *Strand Imp. Co.* v. *Long Beach*, 173 Cal. 769, [161 Pac. 975].)   There was a controversy between the parties over this question.   The judgment determined it against the city and gave it the option to retain the property by paying certain sums of money.   Its payment thereof was in no sense a gift.   On the contrary, it was the consideration paid by it for the restoration of the property to which it had been adjudged to have no title except for the benefit of others.

The judgment appealed from is affirmed.

Lawlor, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Wilbur, J., who was absent.